IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

UNITED STATES OF AMERICA,       *
                              *
           Plaintiff,      *
   v.                  *       CV 110-097
                              *
$255,427.15 in U.S. Currency,   *
                              *
           Defendant.     *

O R D E R

This case comes before the Court on Claimants' Joint Motion to Dismiss and Motion for Summary Judgment. (Doc. no. 43.) In their motion, Claimants seek dismissal of Plaintiff's Complaint or in the alternative pray that summary judgment be granted in their favor.[1] To the extent set forth in this Order, Claimants' Motion to Dismiss is **DENIED**.

## I. BACKGROUND

When deciding a motion to dismiss, a court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

---

[1] In the interest of clarity and efficiency, the Court will address Claimants' Motion to Dismiss within this Order and Claimants' Motion for Summary Judgment in a concurrent order that also addresses Plaintiff's Motion for Summary Judgment.

1

Swaroop Investments, Inc. ("Swaroop") is a domestic profit corporation whose principal mailing address is 317 East Robinson Avenue, Grovetown, Georgia. (Compl. ¶ 5.) Chetankumar P. Patel is the registered agent and Chief Executive Officer of Swaroop, and Pankeeta Patel, Chetankumar P. Patel's wife, is listed as the Chief Financial Officer and Vice President. (Id. ¶¶ 5, 6.) Swaroop d/b/a A&S Market, maintains three business checking accounts with First Citizens Bank & Trust Company ("FCB") bearing account numbers *******25401, *******34601, and *******28801 ("the FCB accounts"). (Id. ¶ 7.) Both Chetankumar P. Patel and Pankeeta Patel ("the Patels") are authorized signatories on the FCB accounts. (Id.)

From January 31, 2008 through July 31, 2009, the Patels made a total of 286 cash withdrawals from the FCB accounts totaling approximately $2,572,000. (Id. ¶ 8.) All of these cash withdrawals, except for two which were made in the amount of $8,000, were made in the amount of $9,000. (Id. ¶ 9.) The Patels would make these cash withdrawals in the amount of $9,000 from each of the three FCB accounts on the same day and during the same visit to the bank. (Id. ¶ 10.)

Prior to banking with FCB, Swaroop maintained several business checking accounts at Regions Bank in Grovetown, Georgia. (Id. ¶ 11.) The Patels were the authorized signatories on those Swaroop accounts. (Id.) The Patels

conducted their banking transactions at Regions Bank in the same manner as they did at FCB by withdrawing $9,000 in cash from up to three separate accounts. (Id. ¶ 12.) While banking at Regions Bank, the Patels allegedly asked bank personnel specific questions as to the amount of money they could withdraw without generating a Currency Transaction Report ("CTR"). (Id. ¶ 13.) Regions Bank closed the Claimants' accounts in February of 2008 due to the Patels' regular large cash withdrawals and deposits of third party checks. (Id. ¶ 14.)

On November 5, 2008, United States Internal Revenue Service Agents ("IRS Agents") interviewed the Patels and provided Chetankumar Patel with an oral and written notice of currency reporting laws, including 31 U.S.C. §§ 5313, 5324, 5317(c)(2) and 31 C.F.R. § 103.22. (Id. ¶ 15.) Chetankumar Patel signed the written notice below the following sentence: "I have read this warning, and understand the above-referenced Federal laws." (Id.) Subsequent to their interview with the IRS Agents on November 5, 2008, the Patels continued their practice of making cash withdrawals in increments of $9,000 from the FCB accounts. (Id. ¶ 16.)

During an interview conducted by United States Immigration and Customs Enforcement ("ICE") agents on September 14, 2009, Pankeeta Patel admitted that friends had advised her not to withdraw more than $10,000 from an account because it would be

reported to the IRS.   (Id. ¶ 17.)   On this day, pursuant to a federal seizure warrant, ICE seized Defendant Currency in the form of cashier's checks issued by FCB from the three accounts that the Patels maintained at FCB.   (Id. ¶¶ 18-20.)   The Defendant Currency has been deposited into a United States Customs and Border Protection suspense account and will be stored in said account during the pendency of this action in accordance with 19 U.S.C. § 1605.   (Id. ¶ 2.)

On July 16, 2010, Plaintiff United States of America filed this civil forfeiture action against $255,427.15 in United States Currency ("Defendant Currency") seeking forfeiture of Defendant Currency pursuant to 31 U.S.C. § 5137(c)(2).   (Doc. no. 1.)   On September 2, 2010, Swaroop Investments, Inc., Chetankumar Patel, Ranjikant Patel, and Pankeeta Patel (collectively "Claimants") intervened and filed their "Verified Answer and Defenses to Complaint For Forfeiture *In Rem* and Counterclaims."[2]   (Doc. no. 15.)

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether

---

[2] On August 2, 2011, the parties filed a Joint Stipulation of Voluntary Dismissal of Claimant Ranjikant Patel. Accordingly, based on this stipulation and pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), Claimant Ranjikant Patel's claim against Defendant $255,427.15 in U.S. Currency is hereby **DISMISSED WITH PREJUDICE**. Therefore, reference to Claimants herein does not include Ranjikant Patel.

the plaintiff will ultimately prevail on the merits.  Scheur v. Rhodes, 416 U.S. 232, 236 (1974).  The court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff.  See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  Id. at 1940 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Although there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged."  Twombly, 550 U.S. at 556-57 (citing Durma Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

Forfeiture actions in rem are also governed by the Supplemental Rules for Certain Admiralty and Maritime Claims ("the Supplemental Rules").  See Supp. R. G(1) (setting standards for forfeiture actions in rem arising from federal statute).  Under the Supplemental Rules, the sufficiency of the complaint depends on whether the complaint "state[s]

sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f).[3]

At trial of a forfeiture action, the Government must prove by a preponderance of the evidence that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). Thus, the complaint must at bottom allege facts sufficient to support a reasonable belief that the property is subject to forfeiture. U.S. v. $21,408.00 in U.S. Currency, No. 4:10-cv-138, 2010 WL 4687876, at *2 (S.D. Ga. Nov. 10, 2010).

### III. STATUTORY AUTHORITY FOR FORFEITURE OF PROPERTY

Federal law requires financial institutions to file reports with the Treasury Department for any cash transaction exceeding ten thousand dollars ($10,000). 31 U.S.C. § 5313; 31 C.F.R. § 103.22. It is illegal for any person to structure a transaction for the purpose of evading the financial institution's reporting requirement. 31 U.S.C. § 5324(a)(3). The applicable

---

[3] The Court notes that both Rule E and Rule G of the Supplemental Rules could potentially apply to forfeiture actions. Courts in the Eleventh Circuit have inconsistently applied these rules. See U.S. v. $21,408.00 in U.S. Currency, 2010 WL 4687876, at *1 (describing the two lines of cases applying the Supplemental Rules to forfeiture cases). However, the practical difference in application is minimal. The Eleventh Circuit's standard for sufficiency of forfeiture complaints is substantively uniform. Id. at *2. Whether evaluated under Rule G, or under both Rule E and Rule G, the Government's complaint must set forth facts that support a reasonable belief that the money seized from claimants is subject to forfeiture. Id.

regulations define structuring by reference to both the *actus reus* and *mens rea* of § 5324:

> [A] person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under section 103.22 of this part. "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

31 C.F.R. § 103.11(gg). The Government may seek civil forfeiture of any funds involved in, or traceable to, structured transactions which violate § 5324. 31 U.S.C. § 5317(c)(2).

Accordingly, Plaintiff's Complaint must allege sufficient facts to support a reasonable belief that Defendant Currency is traceable to or involved in the structuring of deposits or withdrawals in violation of § 5324. Based on Rule 12(b)(6) and the Supplemental Rules, the Court finds that Plaintiff's Complaint is sufficient to withstand Claimants' motion to dismiss.

## IV. DISCUSSION

Claimants' Joint Motion to Dismiss and Motion for Summary Judgment (doc. no. 43) is predominantly an argument for summary judgment. However, Claimants do appear to contest the sufficiency of Plaintiff's Complaint. First, Claimants argue that because Plaintiff failed to raise 18 U.S.C. § 984(a) as a grounds for forfeiture of fungible property, the Government has not connected the Defendant Currency to a structuring violation sufficient to warrant forfeiture. Alternatively, Claimants appear to assert that Plaintiff's Complaint fails to demonstrate how the Defendant Currency is traceable to or involved in a violation of § 5324 because Plaintiff's Complaint only alleges structuring violations by withdrawal, and there are no allegations of structured deposits. Finally, Claimants argue that Plaintiff's Complaint is insufficient because it lacks any allegations that CTRs were not filed for any of Claimants' transactions. The Court will consider each of these arguments in turn.

### A. Inapplicability of 18 U.S.C. § 984 at This Time

Claimants essentially assert that without allegations of structured deposits into the FCB accounts, the Complaint fails to state a claim. Claimants' argument rests on the theory that the Defendant Currency is not traceable to an alleged structuring violation because there are only allegations of

structured withdrawals, not structured deposits. Thus,
Claimants conclude that Defendant Currency is not traceable to a
structuring violation without the aid of 18 U.S.C. § 984.
Because Plaintiff failed to raise § 984 as a means for
forfeiture in its complaint, Claimants argue that Plaintiff's
Complaint fails to state a claim for relief. This argument is
without merit.

Section 984 facilitates Government efforts to seek
forfeiture of fungible property "deposited in an account in a
financial institution," by freeing the Government from the
burden of "identify[ing] the specific property involved in the
offense that is the basis for the forfeiture." 18 U.S.C. §
984(a)(1)(A). However, the Government does not need to rely on
§ 984 at this time. "Where the Government can meet the
requirements of 18 U.S.C. § 981, it may proceed on that basis."
U.S. v. Contents of Four Bank Accounts Located in the Bank of
Dadeville, 330 F. Supp. 2d 1299, 1304 (M.D. Ala. 2004).

Because Claimants' assertion of § 984's inapplicability is
superfluous at this stage of the proceedings, and because, as
discussed below, the Court finds that the Defendant Currency is
properly traceable to or involved in a statutory violation, this
Order need not address whether § 984 may, at some point, prove
applicable to the facts of this case.

**B. Sufficient Allegations that Defendant Property is Traceable To or Involved In a Statutory Violation**

Claimants appear to argue that Plaintiff has not sufficiently asserted facts to support the contention that Defendant Currency is involved in or traceable to a violation of § 5324. Claimants assert that because the Defendant Currency seized was not directly deposited into the account by structuring, then the Defendant Currency is not traceable to the structuring violations and not available for seizure. However, Plaintiff asserts that the Defendant Currency constitutes funds from the FCB accounts that were involved in a series of high volume structured withdrawals. The Court agrees with Plaintiff and finds that the Complaint contains adequate facts to state a claim that Defendant Currency was "involved in" a structuring violation.

The Eleventh Circuit has instructed that § 5317's use of the term "involved in" permits courts to order forfeiture of property "involved in, used to commit, or used to facilitate" a violation of § 5324. U.S. v. Seher, 562 F.3d 1344, 1369 (11th Cir. 2009). Despite adopting this expansive interpretation of the statutory language, the Eleventh Circuit vacated a portion of the forfeiture order in Seher that authorized seizure of a bank account because there was "no evidence . . . linking [the Claimant's] bank account to the reporting . . . offenses." Id.

at 1370.   The Government did not offer deposit slips or account statements, and it failed to even provide evidence of the account's existence or its name.

In the instant Complaint, there are specific factual allegations regarding the structured withdrawals from the FCB accounts contained in the Complaint.   Specifically, the Complaint includes the number of structured withdrawals from the FCB accounts, the FCB account numbers, and the amounts of the structured withdrawals.   Claimants allegedly structured 286 cash withdrawals from the FCB accounts totaling approximately $2,572,000.

Additionally, other facts in the Complaint indicate the circumstances surrounding Claimants' alleged structuring activities.   In particular, Claimants conducted the same practice of withdrawing amounts under $10,000 at Regions Bank prior to banking with FCB.   Regions Bank allegedly closed the Claimants' accounts due to the regular large cash withdrawals and deposits of third-party checks.   Claimants allegedly inquired at Regions Bank about the amount of money they could withdraw without generating a CTR.   Indeed, the Complaint alleges that the Claimants "conducted their banking transactions at Regions Bank in the same manner as they did at First Citizens Bank."   (Compl. ¶ 12.)

Although the Complaint never explicitly states how the structuring violations are directly traceable to Defendant Currency, accepting all the facts alleged within the Complaint as true and making all inferences in Plaintiff's favor, the Complaint sufficiently alleges that the Defendant Currency was property *involved in* transactions structured to evade the reporting requirements.   Plaintiff's Complaint alleges that "[t]he Defendant Currency constitutes property involved in a violation of 31 U.S.C. §§ 5313 or 5324 in that it was structured to evade the reporting requirement of 31 U.S.C. § 5313(a) and is subject to forfeiture."   (Comp. ¶ 21.)    Additionally, the Complaint states that a forfeiture action brought pursuant to 31 U.S.C. § 5317(c)(2) is allowed when the "property [is] involved in a 'structuring' offense."   (Id. ¶ 1.)   If the facts and allegations contained within the Complaint are true, they create more than an "incidental or fortuitous connection" between the Defendant Currency and the Claimants' alleged structuring of cash withdrawals.   See Seher, 562 F.3d at 1370.   In fact, the structured withdrawals were made directly from the bank accounts from which the Defendant Currency was seized.

Furthermore, the concern about the seizure of funds from innocent account holders is not present in this case.   See U.S. v. Certain Accounts, Together With All Monies on Deposit Therein, 795 F. Supp. 391, 395 (S.D. Fla. 1992) (noting that

where the government seeks forfeiture of funds in an account into which tainted funds were negotiated, without stating any facts concerning the balance of the account, there exists a real possibility that unknowing and factually innocent accountholders may be deprived of the use of the funds).   Claimants are the owners of the accounts from which the structured funds were withdrawn.   There are no third parties that have any claim to the funds contained in the FCB accounts, and Plaintiff has not sought the forfeiture of funds seized from accounts of third parties.   Thus, the concern of harm to third party account holders is not present in the instant case.

Despite the heightened pleading requirements of Supplemental Rule G, the allegations contained in Plaintiff's Complaint are sufficient to provide a "reasonable belief that the property is subject to forfeiture."   To be sure, the government "may not seize and continue to hold property upon conclusory allegations that the defendant property is forfeitable."   Certain Accounts, 795 F. Supp. at 394 (citing U.S. v. $38,000 in U.S. Currency, 816 F.2d 1538, 1548 (11th Cir. 1987)).   However, there is no requirement that all of the facts and evidence at the government's disposal be pled in the complaint.   The government must simply plead enough facts for the claimant to understand the government's theory, file a responsive pleading that contains more than a general denial,

and undertake his or her own investigation. <u>U.S. v. All Funds on Deposit in Dime Sav. Bank of Williamsburg Acct. No. 58-400736</u>, 255 F. Supp. 2d 56, 69 (E.D.N.Y. 2003); <u>see also</u> <u>U.S. v. Mondragon</u>, 313 F.3d 862, 866 (4th Cir. 2002) (noting the "basic question" is whether the complaint stated the circumstances giving rise to the claim with the specificity required so that claimant could, without more information, commence an investigation of the facts and frame a responsive pleading).

Here, the Complaint puts Claimants on notice of the factual allegations regarding the Defendant Currency and is sufficient for Claimants to frame a responsive pleading.    In fact, Claimants did file a detailed Answer. (Doc. no. 15.)    Thus, the Court rejects Claimants' argument that Plaintiff's Complaint fails to state a claim based on a lack of factual allegations connecting the alleged structuring violations and the Defendant Currency.

### C. Allegations that CTRs Were Not Filed For Any Of Claimants' Transactions Are Irrelevant

Claimants appear to argue that because Plaintiff's Complaint fails to allege any instance of a financial institution failing to file a CTR, the Complaint fails to allege that Claimants violated § 5324.   However, the Court finds this argument without merit.

14

In U.S. v. Phipps, 81 F.3d 1056, 1061 (11th Cir. 1996), the
Eleventh Circuit explained that in order to be held liable for
violating § 5324(a)(1), an individual must cause a financial
institution to not file a CTR that it had a legal duty to file.
However, a violation pursuant to § 5324(a)(3) occurs when an
individual structures a transaction so as to avoid triggering
the financial institution's duty to file a CTR in the first
place.   Id. at 1060.   As the Eleventh Circuit noted, §
5324(a)(1) was aimed at efforts to prevent a required CTR from
being filed, while § 5324(a)(3) was aimed at structuring to
evade the CTR requirements.   Id.   Thus, whether a financial
institution filed or failed to file CTRs for structured
transactions is completely irrelevant to structuring offenses
under § 5324(a)(3) because these offenses operate "without
regard for whether an individual transaction is, itself,
reportable." Id. at 1060-61.

Other circuits have come to this same conclusion.
Structuring or attempting to structure violates § 5324 even if
ultimately a currency exchange report on the transaction is
issued. See U.S. v. Gibbons, 968 F.2d 639, 645 (8th Cir. 1992).
"[W]hether or not [the accused or claimant] actually fooled
[the financial institution] has no bearing on the substantive
violation under 31 U.S.C. § 5324(a)." U.S. v. Van Allen, 524
F.3d 814, 825 (7th Cir. 2008).   Moreover, many circuit pattern

15

jury instructions on 31 U.S.C. § 5324(a) include this principle. See Seventh Circuit Pattern Criminal Jury Instructions 18 U.S.C. § 5324[2] (1999) (stating that a "jury may find the defendant guilty of unlawfully structuring a transaction whether or not the financial institution filed, or failed to file, a true and accurate currency transaction report"); Fifth Circuit Pattern Criminal Jury Instruction 2.99 (2001) ("If the evidence is that the bank filed the CTR as required, the judge may want to tell the jury that the defendant may be found guilty of this offense even if the bank properly filed the CTR.").

Here, Plaintiff alleges that Claimants structured transactions in increments under $10,000 in an attempt to evade FCB's duty to file a CTR. Whether FCB actually filed CTRs has no bearing on whether Claimants structured or attempted to structure their withdrawals to evade the reporting requirements. Accordingly, the Court finds that Plaintiff's failure to include the fact that FCB filed CTRs in most instances related to Claimants' withdrawals does not make the Complaint insufficient.

## V. CONCLUSION

Based on the foregoing, Claimants' Joint Motion to Dismiss and Motion for Summary Judgment is **DENIED** to the extent set forth above. (Doc. no. 43.) The Court will address the summary

judgment portion of Claimants' Motion (doc. no. 43) in a concurrent order.

   **ORDER ENTERED** at Augusta, Georgia, this _18th_ day of January, 2012.

                    _____
                    HONORABLE J. RANDAL HALL
                    UNITED STATES DISTRICT JUDGE
                    SOUTHERN DISTRICT OF GEORGIA