IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

UNITED STATES OF AMERICA,      *
                               *
            Plaintiff,         *
      v.                       *           CV 110-097
                               *
$255,427.15 in U.S. Currency,  *
                               *
            Defendant.         *

------------

O R D E R

------------

On  July  16,  2010,  the  United  States  of  America
("Plaintiff")  filed  this  civil  forfeiture  action  against
$255,427.15  in  United  States  Currency  ("Defendant  Currency")
seeking forfeiture of Defendant Currency pursuant to 31 U.S.C. §
5137(c)(2).   (Doc.  no.  1.)   On  September  2,  2010,  Swaroop
Investments,  Inc.,  Chetankumar  Patel,  Ranjikant  Patel,  and
Pankeeta  Patel  (collectively  "Claimants")[1]  intervened  and  filed
their  Verified  Answer  and  Defenses  to  Complaint  For  Forfeiture
*In Rem* and Counterclaims.   (Doc. no. 15.)   Presently before the
Court  are  Claimants'  Joint  Motion  to  Dismiss  and  Motion  for
Summary  Judgment  (doc.  no.  43)  and  Plaintiff's  Motion  for

---

[1] On August 2, 2011, the parties filed a Joint Stipulation of Voluntary
Dismissal of Claimant Ranjikant Patel.  (Doc. no. 52.)  Accordingly, based on
this  stipulation  and  pursuant  to  Federal  Rule  of  Civil  Procedure
41(a)(1)(ii),  Claimant  Ranjikant  Patel's  claim  against  Defendant  $255,427.15
in  U.S.  Currency  is  hereby  **DISMISSED WITH PREJUDICE**.   Therefore,  reference  to
Claimants herein does not include Ranjikant Patel.

Summary Judgment (doc. no. 41). The time for filing materials in opposition to these motions has passed, and the motions are now ripe for consideration.[2]

## I. BACKGROUND

Swaroop Investments, Inc. ("Swaroop") is a domestic profit corporation that operates a gas station and convenience store located at 317 East Robinson Avenue in Grovetown, Georgia. Claimant Chetankumar Patel and Claimant Pankeeta Patel are the owners of Swaroop. (Doc. no. 40, Ex. 2 ¶ 1; C. Patel Dep. at 15-16.) Chetankumar P. Patel is the registered agent and Chief Executive Officer of Swaroop, and Pankeeta Patel, Chetankumar P. Patel's wife, is listed as the Chief Financial Officer and Vice President. (Id., Ex. 5 ¶ 1, Ex. 6 ¶ 1.) Among other things, Swaroop, through its operation of the convenience store, provides wire transfers, check cashing services, and an on-site automatic teller machine ("ATM") to its customers. (Id., Ex. 2 ¶ 1.)

---

[2] The Clerk gave the parties notice of the motions for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. nos. 42 & 44.) Thus, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied.

Additionally, Plaintiff's Motion for Extension of Time to File a Reply (doc. no. 54) was filed on August 5, 2011 with the consent of Claimants. This motion is therefore **GRANTED.** Because Plaintiff's Reply was filed within the requested time for extension, its contents have been considered by this Court.

Swaroop d/b/a A&S Market ("Swaroop"), maintains three business checking accounts with First Citizens Bank & Trust Company ("FCB") bearing account numbers *******25401, *******34601, and *******28801 ("the FCB accounts"). (Id., Ex. 1 ¶ 1.)   Both Chetankumar P. Patel and Pankeeta Patel ("the Patels") are the only authorized signatories on the FCB accounts and the only individuals with access to and control over the funds held in Swaroop's FCB accounts. (Id., Ex. 1 ¶¶ 3,6.)

From January 31, 2008 through July 31, 2009, the Patels made a total of 286 cash withdrawals from the FCB accounts totaling approximately $2,572,000 by cashing checks made payable to cash drawn on the FCB accounts. (Ricks Aff. ¶¶ 12-14.)   All of these cash withdrawals, except for two which were made in the amount of $8,000, were made in the amount of $9,000. (Id.) Claimants would cash between two and three checks in a given day, each check drawn on a separate Swaroop FCB account, so that the total amount of the checks cashed exceeded $10,000, but each individual check had individual values below this amount. (Doc. no. 40, Ex. 1 ¶ 16, Ex. 5 ¶ 10, Ex. 6 ¶ 9.)   Claimants would use the cash withdrawn from the FCB accounts to fill their ATM, for lottery and other purposes, as well as for negotiating third party checks as part of Swaroop's check cashing business. (C. Patel Aff. ¶ 10; C. Patel Dep. at 47.)   Between January 31, 2008 and July 31, 2009, the Patels deposited into the FCB accounts

3

more than fifteen thousand (15,000) third party checks totaling more than $4,000,000 as part of Swaroop's check cashing services.   (Doc. no. 40, Ex. 8 ¶ 13, Ex. 10 ¶ 7, Ex. 13 ¶ 6.)

On November 5, 2008, Chetankumar Patel was interviewed by Internal Revenue Service (IRS) Special Agents Curt Larsh and Gwen Weston in connection with Swaroop's banking activities at FCB.   (Id., Ex. 5 ¶ 14; C. Patel Dep. at 34-35; P. Patel Dep. at 22-23; Weston Decl.)   During this meeting Chetankumar Patel received direct written notice from the IRS that banks are required to file Currency Transaction Reports (CTRs) with the Financial Crimes Enforcement Network for all currency transactions in excess of $10,000.   (Doc. no. 40, Ex. 5 ¶ 17; C. Patel Dep. at 34-35; P. Patel Dep. at 24-25; Weston Decl. ¶ 7; Larsh Decl. ¶ 7.)   Special Agent Gwen Weston also read Chetankumar Patel the contents of Notification of Law, Title 31, United States Code, Sections 5313 and 5324.   (Doc. no. 40, Ex. 5 ¶ 17.)   This notice covered the currency reporting requirements and violations related thereto.   (Doc. no. 45, Ex. 4.) Chetankumar Patel received a copy of this notice and also signed it immediately below a sentence that reads "I have read this warning and understand the above-referenced Federal laws." (Id.)

On September 14, 2009, United States Immigration and Customs Enforcement ("ICE") seized the Defendant Currency from

the FCB accounts pursuant to federal seizure warrants. (Compl. ¶¶ 18-20.) In response to these forfeiture proceedings, Pankeeta Patel authored a letter, dated October 20, 2009, to the United States Customs and Border Protection. (Doc. no. 40, Ex. 6 ¶ 23.) This letter stated that she had heard from family and friends that "[they] can't withdraw more than $9999.00 and up amount from one checking account." (Id., Ex. 6 ¶ 24.) Furthermore, in Pankeeta Patel's Verified Responses and Objections to Plaintiff's First Interrogatories to Claimant, she explained that this statement in her October 20, 2009 letter refers to statements made by her uncle, Yogesh Patel. (Id., Ex. 12 ¶ 17.) Claimants worked for Yogesh Patel, and during their employment, he made statements "to the effect that withdrawing more than $9999.00 from a checking account would be reported to the IRS." (Id.) Pankeeta Patel further expanded upon this statement in her Supplemental Responses and Objections to Plaintiff's First Interrogatories when she admitted that Yogesh Patel "said something about not being able to withdraw $9999.00 from a checking account and mentioned the Internal Revenue Service." (Id., Ex. 18 ¶ 17.)

Despite these admissions, the Patels have since filed sworn affidavits stating that neither had knowledge of the currency transaction reporting requirements prior to the seizure of the Defendant Currency. (C. Patel Aff. ¶ 23; P. Patel Aff. ¶ 8.)

Although Claimants admit that they spoke with IRS special agents, they deny that Chetankumar Patel understood the Notification of Law or that the Special Agents informed them of wrongdoing.   (C. Patel Aff. ¶¶ 6, 20, 22.)   Furthermore, Claimants assert that Chetankumar Patel's difficulty in understanding English rendered the Notification of Law ineffective in providing Claimants with knowledge of their alleged violations of § 5324.   (C. Patel Aff. ¶¶ 6, 22.)

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Facts are "material" if they could affect the outcome of the suit under the governing substantive law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor," <u>United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the

motion.   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial.  Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).  Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam).  A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient.  Clark, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment."  Id.  When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden.  If the

movant presents evidence affirmatively negating a material fact,
the non-movant "must respond with evidence sufficient to
withstand a directed verdict motion at trial on the material
fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If
the movant shows an absence of evidence on a material fact, the
non-movant must either show that the record contains evidence
that was "overlooked or ignored" by the movant or "come forward
with additional evidence sufficient to withstand a directed
verdict motion at trial based on the alleged evidentiary
deficiency." Id. at 1116-17. The non-movant cannot carry its
burden by relying on the pleadings or by repeating conclusory
allegations contained in the complaint. See Morris v. Ross, 663
F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant
must respond with affidavits or as otherwise provided by Federal
Rule of Civil Procedure 56.

### III. DISCUSSION

Pursuant to the Civil Asset Forfeiture Reform Act of 2000
("CAFRA"), the Government bears the burden of establishing, by a
preponderance of the evidence, that the defendant account is
forfeitable. 18 U.S.C. § 983(c)(1). CAFRA does not, however,
limit the right of either party to seek summary judgment. U.S.
v. $134,750 U.S. Currency, No. RWT 09-cv-1513, 2011 WL 3608101,
at *1 (D. Md. Aug. 15, 2011).

Plaintiff requests that the Court enter summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56. Plaintiff asserts that the undisputed facts overwhelmingly establish that the Defendant Currency constitutes property involved in or traceable to transactions in violation of 31 U.S.C. § 5324(a) and is thus subject to forfeiture under 31 U.S.C. § 5317(c)(2).

Conversely, Claimants argue that summary judgment should be granted in their favor because Claimants did not cause or attempt to cause any financial institution to fail to file a CTR.  Furthermore, Claimants assert that it is undisputed that they did not make their withdrawals with the intent to evade the currency transaction reporting requirement.  Finally, Claimants argue that they are entitled to summary judgment because Plaintiff cannot prove that the Defendant Currency was involved in a structuring violation under § 5317.  Based on the following, both Plaintiff and Claimants' Motions for Summary Judgment are **DENIED**.

**A. Standard for Civil Forfeiture**

Federal law requires financial institutions to file reports with the Treasury Department for any cash transaction exceeding ten thousand dollars ($10,000).  31 U.S.C. § 5313; 31 C.F.R. § 103.22.  It is illegal for any person to structure a transaction for the purpose of evading the financial institution's reporting

requirement.   31   U.S.C.   §   5324(a)(3).   The   applicable regulations define structuring by reference to both the *actus reus* and *mens rea* of § 5324:

> [A] person structures a transaction if that person,
> acting alone, or in conjunction with, or on behalf of,
> other persons, conducts or attempts to conduct one or
> more transactions in currency, in any amount, at one
> or more financial institutions, on one or more days,
> in any manner, for the purpose of evading the
> reporting requirements under section 103.22 of this
> part. "In any manner" includes, but is not limited to,
> the breaking down of a single sum of currency
> exceeding $10,000 into smaller sums, including sums at
> or below $10,000, or the conduct of a transaction, or
> series of currency transactions, including
> transactions at or below $10,000. The transaction or
> transactions need not exceed the $10,000 reporting
> threshold at any single financial institution on any
> single day in order to constitute structuring within
> the meaning of this definition.

31   C.F.R.   §   103.11(gg).   The   Government   may   seek   civil forfeiture of any funds involved in, or traceable to, structured transactions which violate § 5324.   31 U.S.C. § 5317(c)(2).

In order for the Government to prove that the funds were illegally structured, the Government must demonstrate that: (1) the person knowingly structured, attempted to structure, or assisted in structuring a currency transaction; (2) the person knew of the domestic financial institution's legal obligation to report transactions in excess of $10,000; and (3) the purpose of the structured transaction was to evade the reporting obligation.   U.S. v. MacPherson, 424 F.3d 183, 189 (2d Cir.

10

2005).  Thus, the only *mens rea* required to violate § 5324 is to have the purpose of evading the reporting requirement - not knowledge that structuring itself is illegal.  See U.S. v. Brown, 117 F.3d 471, 473 n.1 (11th Cir. 1997) (noting that although the Supreme Court in Ratzlaf v. U.S., 510 U.S. 135 (1994), found that the willfulness requirement in the criminal enforcement provision of § 5324 requires the Government to prove that defendant acted with knowledge that his conduct was unlawful, Congress promptly amended § 5324 to eliminate the willfulness requirement); MacPherson, 424 F.3d at 189 (noting that within one year of the Ratzlaf decision, Congress responded by eliminating willfulness as an element necessary to convict a person of structuring in violation of § 5324).  Accordingly, the Government cannot prevail on summary judgment if the claimant offers a reasonable and legitimate explanation for organizing transactions in amounts under $10,000, and if that explanation is verified by facts and circumstances, which if believed, would enable a rational jury to conclude by a preponderance of the evidence that the transactions were not structured for the purpose of evading the reporting requirements.  U.S. v. Leak, 123 F.3d 787, 793 (4th Cir. 1997).

### 1. *Claimants Structured Transactions in Violation of § 5324*

Claimants admit that they purposefully conducted their transactions at FCB in amounts less than $10,000.  In fact, it

was their admitted practice to go to FCB and make withdrawals, from two or three of the FCB accounts, in amounts of $9,000 that only in the aggregate amounted to more than $10,000. (See Doc. no. 40, Ex. 1 ¶ 16, Ex. 5 ¶ 10, Ex. 6 ¶ 9; C. Patel Aff. ¶ 17.) This practice continued for many years and included the approximately 286 withdrawals from the FCB accounts, between January 31, 2008 and July 31, 2009, in the total amount of $2,572,000.00.   During this period, Claimants did not make a single cash withdrawal from one account that was in an amount greater than $10,000.

Despite this admitted practice, Claimants argue that they could not have violated 31 U.S.C. § 5324 because they did not cause or attempt to cause a financial institution to fail to file a CTR.   In fact, Claimants argue that FCB almost always filed CTRs for Claimants' withdrawals.   Thus, Claimants conclude that the Court should grant summary judgment in their favor. (Doc. no. 43 at 6-9.)   The Court, however, rejects this argument because whether a financial institution actually filed a CTR is irrelevant in the determination of a structuring violation under § 5324(a)(3).

In U.S. v. Phipps, 81 F.3d 1056, 1061 (11th Cir. 1996), the Eleventh Circuit explained that in order to be held liable for violating § 5324(a)(1), an individual must cause a financial institution to not file a CTR that it had a legal duty to file.

12

However, a violation pursuant to § 5324(a)(3) occurs when an individual structures a transaction so as to avoid triggering the financial institution's duty to file a CTR in the first place. Id. at 1060. As the Eleventh Circuit noted, § 5324(a)(1) was aimed at efforts to prevent a required CTR from being filed, while § 5324(a)(3) was aimed at structuring to evade the CTR requirements. Id. Thus, whether a financial institution filed or failed to file CTRs for structured transactions is irrelevant to structuring offenses under § 5324(a)(3) because these offenses operate "without regard for whether an individual transaction is, itself, reportable." Id. at 1060-61.

Other circuits addressing this issue reached this same conclusion. Structuring or attempting to structure violates § 5324 even if a currency exchange report on the transaction is ultimately issued. See U.S. v. Gibbons, 968 F.2d 639, 645 (8th Cir. 1992). "[W]hether or not [the accused or claimant] actually fooled [the financial institution] has no bearing on the substantive violation under 31 U.S.C. § 5324(a)." U.S. v. Van Allen, 524 F.3d 814, 825 (7th Cir. 2008).

Here, Claimants are accused of structuring transactions under § 5324(a)(3). Whether FCB filed or failed to file CTRs has no bearing on whether Claimants structured or attempted to structure their withdrawals to evade the reporting requirements

under § 5324(a)(3).   Thus, Claimants' contention that they did not violate § 5324(a)(3) because they never caused or attempted to cause a financial institution to fail to file a CTR is irrelevant.

### 2. There is an Issue of Material Fact As To Whether Claimants Had Knowledge of the Currency Reporting Requirements

Plaintiff  makes several arguments that Claimants knowingly structured   transactions   to   evade   the   currency   reporting requirements.   First, Pankeeta Patel admitted in her Verified Responses and Objections to Plaintiff's First Interrogatories to Claimant, that her uncle, Yogesh Patel, told them "that withdrawing more than $9999.00 from a checking account would be reported to the IRS."   (Doc. no. 40, Ex. 12 ¶ 17.)   Second, the IRS special agents read Chetankumar Patel the Notification of Law, informing him of the currency reporting requirements under § 5313, which he signed indicating that he "read and understood."   (Larsh Decl. ¶ 6; Weston Decl. ¶ 7.)   Both IRS Special Agents state that Chetankumar Patel was able to effectively communicate and converse about his business in the English language.   (Larsh Decl. ¶ 5; Weston Decl. ¶ 5.) Finally, Plaintiff argues that the pattern of structuring is sufficient to infer knowledge and intent under § 5324.

Claimants, however, contend that they lacked knowledge of the reporting requirements of financial institutions under §

14

5313. Claimants assert that the allegation that Pankeeta Patel
was aware of CTRs and was told not to take more than $10,000 out
of an account is immaterial because Chetankumar Patel was the
person who generally conducted the transactions.   (Doc. no. 45
at   4.)     Furthermore,   Claimants   deny   that   Pankeeta   Patel
understood what a CTR was or had any knowledge of it prior to
the   seizure   of   the   funds.     (See   P.   Patel   Aff.   ¶   8.)
Additionally, Claimants assert that although IRS Special Agents
read Chetankumar Patel the Notification of Law which he signed,
his understanding of English is limited.   (Id. ¶ 6.)   Claimants
refute the affidavits of the IRS Special Agents and assert that
neither Special Agent ever told them they were doing anything
wrong or explained structuring.   (Id. ¶¶ 20, 22, 23.)

### a) The Court Cannot Infer Knowledge and Intent Based on Claimants' Pattern of Transactions

Plaintiff claims that the sheer volume of transactions in
$9,000   increments   indicates   that   Claimants   understood   the
reporting requirement and structured their transactions so as to
avoid it.   Plaintiff cites U.S. v. Macpherson, 424 F.3d 183 (2d
Cir.   2005),   for   this   proposition   and   attempts   to   compare   the
actions   of   Claimants   in   the   instant   case   to   those   of   the
defendant in Macpherson.

It is appropriate to note that Macpherson is not a case
involving   summary   judgment,   but   rather   a   case   of   the

15

government's appeal of a district judge's decision to acquit the defendant, despite a jury verdict of guilt. See id. at 184. Thus, although the court in Macpherson found that the jury verdict should not have been set aside because circumstantial evidence existed from which a jury could have found that the defendant intended to avoid triggering a CTR filing, this Court cannot conclude that the evidence in this case *requires* a jury to conclude as such. See U.S. v. $17,891.89 in Funds from Union Bank & Trust Account No. 342934201, No. 3:09-cv-767, 2010 WL 6650101, at *7-8 (E.D. Va. Dec. 8, 2010) (finding it was inappropriate at summary judgment stage for the court to draw an inference that, based on the circumstantial evidence from patterns of structured transaction, as a matter of law the claimant had knowledge and intent). Instead, there exists a genuine issue of material fact as to whether Claimants knew of FCB's reporting obligation and intended to avoid it.

### b) The Court Finds An Issue of Material Fact Regarding Claimants' Knowledge

First, Claimants state in their affidavits that neither had knowledge of a CTR reporting requirement or a financial institution's obligation to report currency transactions in excess of $10,000 prior to the seizure of Defendant Currency. (C. Patel Aff. ¶ 23; P. Patel Aff. ¶ 8.) Although Claimants admit that Chetankumar Patel spoke with IRS special agents on

16

November 5, 2008, they deny that he understood the Notification of Law or that the Special Agents informed him of wrongdoing. (C. Patel. Aff. ¶¶ 6, 20, 22.)   Furthermore, Claimants assert that Chetankumar Patel's difficulty in understanding English rendered the Notification of Law ineffective in providing them with knowledge of the violations of § 5324.   (Doc. 45 at 4; Id. ¶ 6.)

Despite this asserted language barrier, it appears that Pankeeta Patel is able to speak and understand English.   (C. Patel Dep. at 40.)   She also admits to "seeing" the Notification of Law provided to her husband, but claims she failed to read it.   (P. Patel Dep. at 24.)   Moreover, while Chetankumar Patel was being interviewed, Pankeeta Patel was at the register at the A&S Market for the majority of the conversation.   (Larsh Decl. ¶ 8.)   She may not have heard most of what was said, including the agent's explanation of the Notification of Law.   Claimants' actions after receiving this notice corroborate their claims of not understanding the notice because they continued to withdraw money from the FCB accounts in the same manner until the Defendant Currency was seized.   Since the seizure, Claimants have changed their practice.   (C. Patel Aff. ¶ 24.)   They claim that had they understood the requirements, they would have conducted their transactions in compliance with the requirements.   (Id.)

17

Thus, the evidence regarding Claimants' knowledge of a financial institution's duty to file CTRs for transactions greater than $10,000 is in conflict. Based on the foregoing, this Court cannot find as a matter of law that Claimants had knowledge of the currency reporting requirements.

### 3. There is an Issue of Material Fact Whether Claimants Intended to Evade the Currency Reporting Requirements

Furthermore, Claimants put forth an explanation for withdrawing amounts less than $10,000 other than for the purpose of evading the CTR reporting requirements under § 5313. Claimants assert that Pankeeta Patel's uncle employed both Claimants and taught them how to run a convenience store from 2000 until 2002. Claimants alleged that during this time, Pankeeta Patel's uncle, Yogesh Patel, informed them that it was "illegal" to withdraw $10,000 or more from one account. (Doc. no. 43 at 8.) Claimants argue that this advice is the reason for their structuring the withdrawals from the FCB accounts in such a manner. (Id.) Claimants therefore argue that they lacked the requisite intent to evade the reporting requirements because they have advanced a legitimate reason for their transactions. (Id. at 10-11.)

Plaintiff asserts that Claimants' explanation for the structured transactions is "not a ground upon which to have a trial." (Doc. no. 56 at 2.) Plaintiff argues that based on the

number of withdrawals in increments of $9,000, as well as Claimants' specific knowledge of the currency reporting requirements, the only inference to be drawn is that Claimants intentionally violated the currency reporting requirements through their structured transactions.

Based on the record before the Court, there is a question of material fact regarding Claimants' intent while conducting their withdrawals. The instant case is analogous to $134,750 U.S. Currency, 2011 WL 3608101, in which the court found that summary judgment was inappropriate when it was unclear whether the claimant had knowledge of the reporting requirement or the intent to evade the currency reporting requirements. Id. at *4. Although the government presented evidence that the claimant confirmed in a conversation with an employee of the bank that he knew about the reporting requirements, the claimant also presented a sworn affidavit that he had no knowledge of the requirements. Id. at *3. In addition, the claimant provided an incomplete account of the conversation with the bank employee in his deposition testimony. Id. The court found that despite the series of transactions under $10,000 and the claimant's alleged admission of knowledge of the currency transaction reporting requirements, there was insufficient evidence to support summary judgment in the face of the claimant's repeated denials. Id. Moreover, the court found that the allegedly contradictory

deposition testimony may have been attributable to the fact that the claimant was not a native English speaker, and the structured deposits may have been a result of the claimant's fear of robbery. Id.

The instant case is similar in many respects. First, although there are a series of transactions under $10,000 and evidence that the IRS gave Claimants a direct warning regarding the currency reporting requirements, there also is direct evidence in the form of sworn affidavits indicating that Claimants may not have understood the warnings given. Despite the affidavit of Special Agents Weston and Larsh that Claimants were able to effectively communicate and converse in English (Weston Decl. ¶ 5; Larsh Decl. ¶ 5), Claimants allege that Chetankumar Patel only speaks English as a second language (C. Patel Aff. ¶ 6) and thus did not understand the Notification of Law and conversation with the Special Agents.

Moreover, Claimants assert that they structured their transactions because they had been taught to do so by their uncle and they believed that withdrawing more than $10,000 from one account was illegal. (Id. ¶ 9; P. Patel Aff. ¶ 7.) This assertion is supported by the fact that Claimants began their structured withdrawals when working for their uncle and continued them even after a visit from the Special Agents on November 5, 2008. (Doc. no. 45 at 9; C. Patel Aff. ¶¶ 13, 15)

20

Although Plaintiff may be correct that this explanation does not prove that Claimants were not intending to evade the reporting requirements, the explanation is not so incredible that it can be dismissed out of hand.   See U.S. v. Leak, 123 F.3d 787, 797 (4th Cir. 1997).

In short, the Court will not invade the province of the jury by finding that Claimants' assertions of ignorance were too "incredible" to be believed or that Claimants conducted their transactions with an intent to evade the reporting requirements. Conversely, the Court cannot determine as a matter of law that Claimants conducted their transactions without knowledge of the currency transaction reporting requirements or for a legitimate purpose other than evading the requirements.

### B. Defendant Currency is Sufficiently Involved in Claimants Alleged Violation so that Summary Judgment is Not Appropriate

Claimants assert that they are entitled to summary judgment on the ground that Plaintiff cannot prove that the Defendant Currency itself was involved in a structuring violation for the purposes of § 5317.  (Doc. no. 43 at 3.)  Essentially, Claimants assert that the Defendant Currency was not a product of structured deposits and thus is not involved in or traceable to a structuring violation.   However, Plaintiff argues that the Defendant Currency constitutes funds that have been recycled through a long-running, high-volume series of transactions that

21

involve structuring. As such, Plaintiff argues that the Defendant Currency is subject to forfeiture as funds that were involved in or traceable to a structuring violation under § 5317.

The term "involved in" has been interpreted broadly by courts. U.S. v. Seher, 562 F.3d 1344, 1369 (11th Cir. 2009). The Eleventh Circuit has instructed that § 5317's use of the term "involved in" permits courts to order forfeiture of property "involved in, used to commit, or used to facilitate" a violation of § 5324. Id. However, there must be more than just an incidental or fortuitous connection to the violations. Id. at 1370.

Here, Claimants consistently withdrew amounts greater than $10,000 by cashing two or three checks with individual values of $9,000. The total amount of withdrawals during the relevant period of time totals more than $2.5 million. There is evidence that the withdrawn money was then used to cash third party checks at the A&S Market, which were deposited back into the FCB accounts. The amount of cashed checks deposited back into the FCB accounts totals approximately $4 million. Because the amounts withdrawn to cash the checks at the A&S Market are less than the amounts of the checks deposited back into the FCB accounts, there is an implication that the funds in the FCB accounts were being continuously recycled to fund Swaroop's

22

check cashing business.   This cycle creates at least a question of material fact whether the Defendant Currency seized from the FCB accounts constitutes funds involved in or traceable to the alleged structuring violations, subjecting the Defendant Currency to forfeiture under § 5317.

## IV. CONCLUSION

For the forgoing reasons, the Court finds genuine issues of material fact exist as to whether Claimants unlawfully structured cash withdrawals in violation of 31 U.S.C. § 5324. Accordingly, the Court **DENIES** both Plaintiff's Motion for Summary Judgment (doc. no. 41) and Claimants' Motion for Summary Judgment (doc. no. 43).   This case shall proceed to trial on Plaintiff's claim of civil forfeiture under 31 U.S.C. § 5317 for structuring violations pursuant to 31 U.S.C. § 5324.

**ORDER ENTERED** at Augusta, Georgia, this ___8th___ day of January, 2012.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA